# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                     Case No.    07-M-24
                                                          07-CR-149

JUAN ANTONIO VILLANUEVA,

    Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COMPLAINT

On February 21, 2007 this court issued a criminal complaint charging Juan Antonio Villanueva[1] ("Villanueva") with conspiring with intent to distribute more than 1000 kilograms of marijuana, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A). The court also issued a warrant for Villanueva's arrest.

On February 22, 2007, Villanueva was arrested in Laredo, Texas. On February 23, 2007, Villanueva appeared before a United States Magistrate Judge in the Southern District of Texas, at which time he was remanded into the custody of the United States Marshals pending a detention and identity hearing on March 2, 2007. A hearing was conducted on March 2, 2007, and on March 7, 2007, Villanueva was committed to the custody of the United States Marshal for transport to this district.

No further court proceedings occurred until May 31, 2007 when Villanueva appeared before this court, and an order of detention was entered. A preliminary hearing was scheduled for June 8, 2007, which was rescheduled for June 15, 2007, at the request of Villanueva's attorney.

On June 6, 2007, Villanueva filed a "Motion to Dismiss Charges & For Release from Custody." At the time the motion was filed, the only charges pending were those in the complaint. The basis of the

---

[1] In the complaint and on the docket, the defendant's name is spelled "Villanuevo." In his motion to dismiss the complaint, the defendant noted that the correct spelling of his last name is "Villanueva" and it was this spelling that was used in the indictment. The court shall refer to the defendant as Villanueva.

motion was that an indictment was not returned within thirty days of his arrest, in violation of 18 U.S.C. § 3161(b), and his immediate release from custody was requested on the basis that he was not provided a preliminary hearing within ten days of his arrest, in violation of Federal Rule of Criminal Procedure 5.1(c). The court set the matter for a hearing on June 13, 2007. On June 12, 2007, the grand jury returned an indictment against Villanueva.

At the hearing held on June 13, 2007, the defendant was arraigned on the indictment, and then Villanueva asked to proceed with his motion to dismiss the charges and for his immediate release from custody. The defendant argued that although the indictment now represents the charges against him, his motion to dismiss the complaint is not moot. The defendant's argument is as follows: had a hearing on the defendant's motion to dismiss the complaint occurred promptly after it was filed, and the court determined that a violation had occurred for which dismissal of the complaint was required, it was within the court's discretion to dismiss the complaint with or without prejudice. If the court had dismissed the complaint with prejudice, the government would have been precluded from obtaining the present indictment. The court received oral argument and permitted the parties to submit briefs regarding this matter.

If the grand jury had not returned an indictment, there is little doubt that the court would have dismissed the criminal complaint and ordered the defendant released from custody. When a defendant is held in custody, he must be given the opportunity for a preliminary hearing within ten days of his arrest. Rule 5.1(c). This ten day time limit applies even if the defendant is arrested in another district. Rule 5(a)(3)(C). If a defendant is not afforded a preliminary hearing within the ten day time limit, the defendant "shall be discharged from custody or from the requirement of bail or any other condition of release . . . ." 18 U.S.C. § 3060(d). However, the fact that the defendant is not afforded a timely preliminary hearing does not affect the government's ability to again prosecute the defendant for the same charges. Id. There is no question that the defendant was not afforded a preliminary hearing within

the ten day time limit, but the defendant's subsequent indictment moots a motion for release under 18 U.S.C. § 3060(d).

The court shall now turn to Villanueva's claim that the charges against him should be dismissed on the basis that he was not indicted within thirty days of his arrest, in violation of the Speedy Trial Act and specifically 18 U.S.C. § 3161(b). Under the Speedy Trial Act, "delay resulting from transportation of any defendant from another district" shall be excluded, but "any time consumed in excess of ten days from the date of an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable." § 3161(h).

On March 7, 2007, the Marshal was ordered to transport Villanueva to this district. Villanueva did not appear in this district until May 31, 2007, some 85 days later, and the defendant was not indicted until June 12, 2007, some 97 days later. The indictment was more than two months beyond the deadline required under the Speedy Trial Act. Even excluding the ten days that are permitted under § 3161(h)(1)(H) for transporting a defendant from another district, the indictment is 57 days too late.

The ten days is not a firmly established limit of the amount of time that may be excludable as a result of delays resulting from transporting a defendant; it is a presumption. Section 3161(h)(1)H) states that time in excess of the ten days shall be presumed to be unreasonable. A presumption can be rebutted, but the court finds that the government has failed to establish that any time, not even ten days, should be excluded from the 30 day time limit for an indictment under the Speedy Trial Act. Regardless of the reasons for the delays in transporting the defendant to this district, these delays did not prevent the government from being able to pursue an indictment against the defendant. There has been no suggestion that the defendant's out-of-district custody in any way hindered the government from seeking an indictment against the defendant. His out-of-state presence certainly did not preclude the issuance of a criminal complaint against him for similar charges. Thus, it is the conclusion of this court that because

there was no "delay *resulting* from transportation of any defendant," § 3161 (emphasis added), there is no basis to exclude this time under the Speedy Trial Act.

Although the government calculates the deadline for filing the indictment differently, it nonetheless concedes that the indictment was untimely and agrees that dismissal of the complaint would have been appropriate.

Thus, this court has no hesitation in dismissing the complaint. Dismissal of the complaint will have no effect on Villanueva's present custodial status since he has been indicted and detained. Dismissal of the complaint without prejudice prior to the return of the indictment would not alter that status of the current charges. It is only if the complaint had been, or is now, dismissed with prejudice that the viability of the present indictment is placed in jeopardy.

The court agrees that the indictment does not moot Villanueva's motion, at least to the extent that it requests that the complaint be dismissed with prejudice. See United States v. Bittle, 699 F.2d 1201, 1207 (D.C. Cir. 1983) ("[A] subsequently filed indictment should be dismissed only if the complaint should have been dismissed with prejudice.") If the court had been able to hear Villanueva's motion earlier and ordered the complaint dismissed without prejudice, the government would have been precluded from pursuing the present indictment. If Villanueva was entitled to dismissal of the complaint with prejudice, Villanueva should not suffer the consequences and the government should not be entitled to reap the benefits of the court's scheduling.

Turning to the issue of dismissal with prejudice, § 3162(a)(1) instructs,

[i]n determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice.

The defendant concedes that the crimes with which he is charged are very serious crimes. The defendant is charged in a two count indictment along with two other co-defendants with conspiring to

distribute at least five kilograms of cocaine and one-thousand kilograms of marijuana, in violation of Title 21, United States Code, Section 846, 841(a)(1) and 841(b)(1)(A), and in count two with possessing at least five kilograms of cocaine, in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(A), and Title 18, United States Code, Section 2. If convicted, of count one, the defendant faces a mandatory minimum of ten years in prison and a maximum of life. As for count two, the defendant faces a mandatory minimum of five years in prison and up to forty years in prison. The complaint alleges the single crime set forth in count one.

The government alleges that the defendant was the head of a large-scale and sophisticated drug trafficking operation that involved four different states and involved such large sums of money that the fact that a local distributor allegedly owed nearly a half-million dollars in a drug debt did not dissuade the defendant from sending him another six-hundred pounds of marijuana.

There is no doubt that these are incredibly serious charges. This fact weighs heavily against dismissing the complaint with prejudice. However, the seriousness of charges alone cannot justify a court's refusal to dismiss a complaint with prejudice.

The defendant argues that courts have dismissed complaints with prejudice in similar cases involving serious drug offenses and cites United States v. Watkins, 339 F.3d 167 (3rd Cir. 2003) and United States v. Miller, 23 F.3d 194 (8th Cir. 1994) as examples. In Watkins, the Third Circuit affirmed the district court's order dismissing with prejudice a complaint that charged two defendants with conspiracy to import more than 500 grams of cocaine. 339 F.3d at 173-74. However, the court held that dismissal of the complaint and its charge that the defendants conspired to import cocaine, with prejudice did not bar the defendant's prosecution for the distinct offense of importation of cocaine. Id. at 179.

In Miller, the Eighth Circuit held that the district court applied the wrong legal standard and should have dismissed with prejudice a complaint alleging the defendants conspired to possess with intent to distribute ten kilograms of cocaine and twenty-five pounds of marijuana when the defendants

were not indicted until eighty-eight days after they were arrested. 23 F.3d at 197-98. The court further held that the dismissal of the complaint with prejudice did not bar prosecution for other related offenses that were not alleged in the complaint. Id. at 198.

Although Miller and Watkins are similar to the present case in that they both involve serious drug charges, on a scale of "seriousness," this case exceeds both Miller and Watkins in scope. The quantities of controlled substances alleged in the present complaint are substantially more than those alleged in either Miller or Watkins. According to the present complaint, a confidential informant reported receiving two to three-hundred pounds of marijuana a month from the defendant over the past two years and a total of sixty-two kilograms of cocaine over the past six months. In certain months, the confidential informant would receive as much as five to six-hundred pounds of marijuana. Thus, as to this one confidential informant, the defendant is alleged to have distributed at least sixty-two kilograms of cocaine and a conservative estimate of more than seven thousand pounds of marijuana. According to the complaint, the value of these controlled substances was approximately five-million dollars. Further, the defendant was not merely a participant in the conspiracy but rather is alleged to have been its leader.

Although the seriousness of the crime alleged weighs heavily on the side of dismissing the complaint without prejudice, other facts and circumstances that justify the dismissal of the complaint weigh on the side of dismissal with prejudice. There is absolutely no good reason as to why it took more than one-hundred days following the defendant's arrest for the grand jury to return an indictment against the defendant.

The government attempts to argue that the delay in obtaining the indictment was related to the delay in the defendant being transported to this district. As stated earlier, the court finds no reason to conclude that any problem with the defendant's transportation should have had any affect upon the government's ability to present the case to the grand jury. There is no indication that the defendant was required to be present in the district prior to the government presenting the matter to the grand jury.

Rather, the delay in obtaining the indictment and the delay in transporting the defendant are distinct issues, although both are cause for substantial concern for this court. But since they are distinct, it is only the delay in the government seeking the indictment that is relevant to the present determination of whether the complaint should be dismissed with prejudice.

In concluding that the defendant's transportation problems did not limit the government's ability to present the matter to the grand jury, the government is left with no explanation for its failure to timely obtain an indictment. If the government decides to wait until the defendant arrives in this district prior to obtaining an indictment in reliance upon the United States Marshal's ability to promptly transport the defendant, the government does so at its own peril. If the government fails to diligently watch the calendar and permits more than one-hundred days to elapse between an arrest and an indictment, the court will likely order the complaint dismissed with prejudice in all but the most serious cases.

This court concludes that this is one of those "most serious cases." The alleged quantity of controlled substances involved, the length of time and the defendant's alleged role as a leader of the conspiracy make this an exceptionally serious case. The court would expect that in such a serious case the government would exercise the utmost diligence in seeking a timely indictment. That was not done in this case, and the failure to be diligent could result in a defendant evading prosecution. Fortunately for the government, Congress has provided a safety-net where courts are instructed to consider the seriousness of the crime before dismissing a complaint with prejudice. However, this safety-net, once extended, may not always be available. For example, if prosecutors continued to be lax in pursuing indictments within the required time limit, that alone might justify a dismissal with prejudice. Therefore, the court will briefly review the government's recent track record on transporting defendants to this district vis-a-vis obtaining an indictment within the Speedy Trial Act.

The federal rules create the presumption that a defendant can be transported to any district from anywhere within the United States in not more than ten days. 18 U.S.C. § 3161(h)(1)(H). On the same

day that the defendant first appeared in this district, May 31, 2007, four other defendants made their initial appearances in this district following transfers from other districts. (See case nos. 07-CR-135; 07-M-39, E.D. Wis.) In 07-M-39, the three defendants were arrested on April 27, 2007, and appeared in the District of Arizona. The grand jury has not yet returned an indictment in that case. In 07-CR-135, the defendant was arrested on April 25, 2007 and appeared in the Northern District of Texas. The grand jury returned an indictment on June 5, 2007.

Simply by reviewing the dockets of these cases, it is clear that there have recently been substantial problems in promptly transporting defendants to this district. These problems caused by such delays in transportation must be immediately corrected. One way is for the prosecutors in both the arresting and charging districts to confer and make sure that the defendant is afforded an opportunity for a preliminary within ten days, in either district. Another is for the prosecutor in the charging district to calendar a timely grand jury session for the purpose of obtaining an indictment. If the government (U.S. Attorney and U.S. Marshal) fail to correct the underlying causes of these problems and another violation of this nature occurs, the dismissal will likely be with prejudice. The court cannot give the government a pass to avoid the consequences of the Speedy Trial Act simply because the worst violations occur in the most serious cases. Such inaction by the court would vitiate the effectiveness of the Speedy Trial Act.

Finally, the court finds that there is no evidence that the government's failure to obtain a prompt indictment was the result of bad faith or improper motive. Although not factored into the court's conclusion, it is noteworthy that "[o]n a number of occasions between the defendant's arrest and his arrival in this district, [the defendant's attorney] spoke by telephone with the attorney for the government regarding this matter," and at no time did the defendant's attorney raise any concern that the Speedy Trial Act may have been violated. (Docket No. 17 at 2, 8.) This indicates that the defendant did have continued representation throughout his odyssey from Texas to Wisconsin.

By way of contrast, the court is particularly concerned of a situation where substantial delays in transporting defendants would result in defendants being effectively lost within the system and without effective representation. Although counsel would be appointed to represent an indigent defendant in the district of arrest, any further involvement by appointed counsel during the period of removal is minimal, at best. Thus, the court is left to wonder, if a defendant is left in limbo, ordered into the custody of the United States Marshal for transport to the charging district but not yet arrived in that charging district, who is looking out for that defendant and ensuring that such transport is timely? If more than thirty days elapses between the defendant's arrest and his appearance in the charging district, and no indictment is returned, who is going to move for dismissal of the complaint? If the defendant is not afforded a timely preliminary hearing, who is going to move for the defendant's immediate release from custody?

The court suspects that it is precisely because of these substantial concerns that Congress established ten days as the outer limit of reasonableness when it comes to transporting a defendant from one district to another. As this case demonstrates, a defendant may linger for months awaiting transport without even the benefit of a preliminary hearing or a grand jury's finding of probable cause. However, this court's concerns regarding a defendant lingering in limbo without the benefit of an advocate safeguarding his rights are not applicable in the present case because there is no indication that the defendant was without the active involvement of counsel for any significant length of time.

Therefore, given the incredible seriousness of the crime alleged in the complaint and the fact that the delay in obtaining the indictment was not for any improper motive on the government's part, the court concludes that a dismissal of the complaint with prejudice is not warranted.

**IT IS THEREFORE ORDERED** that the defendant's motion to dismiss the complaint is **granted**, but the dismissal shall be without prejudice.

Dated at Milwaukee, Wisconsin, this 21st day of June, 2007.

                                  BY THE COURT:

                                  s/Aaron E. Goodstein
                                  AARON E. GOODSTEIN
                                  U.S. Magistrate Judge