**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

**UNITED STATES OF AMERICA**
        **Plaintiff,**

   v.                                                                         **Case No. 07-CR-149**

**JUAN ANTONIO VILLANUEVA**
        **Defendant.**

### SENTENCING MEMORANDUM

Defendant Juan Antonio Villanueva pleaded guilty to conspiring to distribute five kilograms or more of cocaine and 1000 kilograms or more of marijuana. 21 U.S.C. §§ 841(a)(1), (b)(1)(A) & 846. The probation office prepared a pre-sentence report (PSR) in anticipation of sentencing, which set defendant's offense level at 31 (base level 36, U.S.S.G. § 2D1.1(c)(2), minus 2 under the safety valve provision, § 2D1.1(b)(11), and minus 3 for acceptance of responsibility, § 3E1.1) and his criminal history category at I, producing an imprisonment range of 108-135 months under the sentencing guidelines.

Neither side objected to the PSR's guideline calculations, which I found correct and accordingly adopted. Defendant requested a sentence below the range, while the government advocated a prison term at the low end of the range. Upon consideration of all of the factors set forth in 18 U.S.C. § 3553(a), I elected to impose a sentence slightly below the range. This memorandum sets forth my reasons. See 18 U.S.C. § 3553(c).

### I. SENTENCING PROCEDURE

In imposing sentence, the district court must first calculate the advisory guideline range, then select an appropriate sentence under all of the factors set forth in 18 U.S.C. § 3553(a).

See Gall v. United States, No. 06-7949, 2007 WL 4292116, at *7 (U.S. Dec. 10, 2007); United States v. Holt, 486 F.3d 997, 1004 (7th Cir. 2007). The § 3553(a) factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The statute directs the court, after considering these factors, to impose a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing – just punishment, deterrence, protection of the public and rehabilitation of the defendant. Id.; see also Kimbrough v. United States, No. 06-6330, 2007 WL 4292040, at *10 (U.S. Dec. 10, 2007) (stating that the "overarching provision" of the statute is to "'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing"). In making this determination, the district court may not presume that the guideline sentence is the correct one.

2

Rita v. United States, 127 S. Ct. 2456, 2465 (2007); United States v. Demaree, 459 F.3d 791, 794-95 (7th Cir. 2006), cert. denied, 127 S. Ct. 3055 (2007). Rather, after accurately calculating the advisory range, so that it "can derive whatever insight the guidelines have to offer, [the court] must sentence based on 18 U.S.C. § 3553(a) without any thumb on the scale favoring a guideline sentence." United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007).

## II. DISCUSSION

### A. Nature of Offense

For about two years, defendant, a resident of Texas, supplied large amounts of marijuana to Milwaukee area distributors. He typically fronted a co-conspirator, Fernando Lopez-Wetzel, 200 to 600 pounds of marijuana each month. In 2006, he began supplying Lopez-Wetzel with cocaine as well, typically fronting 10 to 15 kilograms each month. Lopez-Wetzel in turn distributed the drugs to smaller dealers in the Milwaukee area. Defendant used couriers and unwitting shipping companies to get his drugs from Texas to Milwaukee.

The conspiracy came to light when, on January 27, 2007, co-conspirator Thomas Jessup attempted to drive a vehicle with a trap compartment containing 10 kg of cocaine from Texas to Wisconsin. Law enforcement stopped Jessup in Arkansas, and Jessup later made a controlled delivery to Lopez-Wetzel, leading to his arrest as well. Lopez-Wetzel then made monitored calls to defendant, eventually leading to defendant's arrest in Texas. In a post-arrest statement, defendant admitted supplying cocaine and marijuana to Milwaukee area dealers.

The parties estimated the offense to involve 4800 pounds of marijuana and 120 kilograms of cocaine, substantial amounts. However, the offense was not aggravated by

3

violence, weapon possession or threats, defendant was not designated a leader or organizer, no deaths resulted, and defendant provided to the government all of the information he had about the offense, allowing him to qualify for the safety valve. See 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2.

**B.   Character of Defendant**

At sixty years old and with no prior record, defendant presented as a rather unusual drug offender. Defendant came to the United States from Mexico in 1969, owned a home in Laredo, Texas, and was married with three children, ages fourteen, thirteen and eight. His wife stated that he was a good, hard-working person, and an excellent father. Defendant worked in the cattle industry in Texas for nineteen years before his arrest, although the precise nature of his business was difficult to determine.

According to immigration authorities, defendant became a permanent resident in 1976. He applied for naturalization in 2003, but his request was held up because he apparently gave false information to agents. He later withdrew the application and was subject to deportation based on his conviction in this matter.

Defendant had some health issues. In 1990, he was diagnosed with diabetes, for which he took medication. He also reported developing a rash since being in custody on this matter. Jail officials indicated that the rash was improving, defendant said otherwise. However, I was provided with no medical evidence on the issue, just the statements in the PSR. Defendant acknowledged some alcohol and cocaine use, but denied a serious problem. He did indicate that counseling would be helpful, though.

**C.    Purposes of Sentencing**

Drug dealing, particularly at defendant's level, is certainly a serious crime, so a substantial prison term was necessary to provide just punishment. See 18 U.S.C. § 3553(a)(2)(A). However, the case presented no aggravating circumstances, such as violence, weapon possession or threats. Nor was there evidence of specific negative consequences to the community. Further, given his lack of record, age and other personal characteristics, I did see defendant as presenting a significant threat to the public or a particular risk of recidivism. See 18 U.S.C. § 3553(a)(2)(B) & (C). Aside from drug education, he appeared to have no correctional treatment needs. See 18 U.S.C. § 3553(a)(2)(D).

**D.    Guidelines**

The guidelines recommended a prison term of 108-135 months. Defendant suggested that a sentence below that range was warranted based on his age, health problems, lack of prior record, and the circumstances of his removal from Texas to Milwaukee. He noted that he was sixty years old, a first offender, and suffered from diabetes and a painful skin condition. He further indicated that he was arrested in Texas on February 22, 2007, and ordered removed on March 7, but did not reach this district until May 31, 2007. En route, he spent time in seven jails in four states with little or no family contact or medical care.

As the government noted in its sentencing memorandum, some of these factors are discouraged bases for departure under the guidelines, see U.S.S.G. §§ 5H1.1 (age) & 5H1.4 (physical condition), while others were already taken into account in setting the range, see U.S.S.G. § 5C1.2 (safety valve). But if Booker means anything at all, it must mean that the court can give further weight to factors covered by the guidelines, see United States v.

5

Wachowiak, 496 F.3d 744, 753 (7th Cir. 2007), and consider personal characteristics deemed disfavored or discouraged by the guidelines, see United States v. Wallace, 458 F.3d 606, 608 (7th Cir. 2006); see also Gall, 2007 WL 4292116, at *11 (upholding district court's consideration of the defendant's young age).

I did agree with the government, however, that under the facts of this case some of these factors did not warrant significant weight. Diabetes is a potentially serious disease, particularly if not properly treated. However, defendant provided no medical evidence as to the severity of his condition; nor did he argue that the Bureau of Prisons could not properly treat it. I accepted that the care he received while in transit between Texas and Wisconsin was irregular but noted that things were likely to stabilize once he was placed in a federal prison. As to the rash, I had very little evidence about what it was and how it affected defendant. Jail officials stated it was improving, defendant said it was not, and I really had no way to know. I therefore could not see giving this factor significant weight in imposing sentence. Defendant also provided no details of the conditions of his confinement during his trek from Texas to Wisconsin.

I did give defendant's advanced age some consideration. At age sixty, a guideline sentence would consume most of defendant's remaining years. The Seventh Circuit has acknowledged that "death in prison is not to be ordered lightly, and the probability that a convict will not live out his sentence should certainly give pause to a sentencing court." United States v. Wurzinger, 467 F.3d 649, 652 (7th Cir. 2006), cert. denied, 127 S. Ct. 3066 (2007); see also Holt, 486 F.3d at 1004. Defendant's life expectancy was likely lower than the average sixty

6

year old, as he suffered from diabetes, which he acquired in 1990.[1]

It is true that persons of advanced age are, statistically speaking, less likely to re-offend. See United States Sentencing Commission, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines 12 (May 2004). However, as the government rightly noted, defendant operated a large scale drug dealing operation while in his late fifties, contrary to the general trends. Thus, I did not give this factor great weight. I did, however, consider the fact that defendant had never been to prison before; thus, a substantial term was not needed to deter him from re-offending. See United States v. Qualls, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005) ("Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend.").

As the government properly noted, the court must also consider general deterrence and just punishment. However, the specific circumstances of this case did not require a guideline sentence to accomplish those purposes. As indicated, while the amounts involved here were large, there was nothing else aggravating about the case: no violence, weapon possession, threats or other dangerous conduct. I also noted that defendant was likely to be deported from the United States, where he had lived for virtually all of his adult life. He would thus be separated from his wife and minor children, unless they chose to follow him, which seemed unlikely. This significant collateral consequence added to the punitiveness of the situation. See United States v. Ferreria, 239 F. Supp. 2d 849, 855-58 (E.D.Wis.2002) (departing from the

---

[1] The Seventh Circuit addressed the issue of life expectancy for diabetics in the context of sentencing in United States v. Bullion, 466 F.3d 574 (7th Cir. 2006). In the present case, defendant did not make a similar statistical argument. Further, he developed the disease in 1990, well before sentencing, unlike in Bullion.

7

guidelines where the defendant would be deported and separated from his family). It is also questionable the extent to which lengthy drug sentences deter other would-be dealers or prevent any crime from an incapacitation stand point. See United States Sentencing Commission, Fifteen Years of Guideline Sentencing 133-34 (Nov. 2004). I did, despite the mitigating circumstances, still impose a substantial prison sentence, one that should give pause to anyone considering entering the drug dealing business and which recognized the serious nature of drug trafficking.

Under all of the circumstances, I found a sentence of 84 months sufficient but not greater than necessary. Because the sentence was based on the particular facts of the case and varied by only about 2 levels from the guidelines, it did not create unwarranted disparity. See 18 U.S.C. § 3553(a)(6). A seven year sentence for a sixty year old, non-violent, first-time drug offender was certainly sufficient punishment.

### III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 84 months. I recommended that he be placed in Texas to ensure continued family contact and participate in any substance abuse education and treatment programs available. I further ordered him to serve a three year supervised release term, the conditions of which appear in the judgement.

Dated at Milwaukee, Wisconsin, this 14th day of December, 2007.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge